**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 11-2990 JB

JUAN RECOBO,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion Appealing Detention Order Pending Trial and to Allow Reasonable Conditions of Release, filed March 22, 2012 (Doc. 40)("Motion"). The Court held a hearing on March 28, 2012. The primary issues are: (i) whether the Court should reconsider the Detention Order Pending Trial, filed November 15, 2011 (Doc. 15)("Detention Order"), issued by the Honorable Alan C. Torgerson, United States Magistrate Judge, which concludes that Defendant Juan Recobo is a flight risk; (ii) whether Plaintiff United States of America has proven by clear-and-convincing evidence that Recobo is a danger to the community; and (iii) whether there are conditions or a combination of conditions which would reduce the risk of flight and/or the danger to the community to an acceptable level. The Court reconsiders Judge Torgerson's Detention Order, but in doing so, concludes that the United States has proven that Recobo is a flight risk. The Court concludes that the United States has not proved by clear-and-convincing evidence that Recobo is a danger to the community. The Court will, thus, affirm Judge Torgerson's Detention Order and order that Recobo should continue to be detained pending trial.

## FACTUAL BACKGROUND

Recobo "was born in Torion, Mexico." See Pretrial Services Report at 1, disclosed November 14, 2011 ("Report"). Recobo's parents are both deceased. See Report at 1. Recobo has two siblings who reside in Mexico. See Report at 1. Recobo has been married for one year, but is currently separated from his wife. See Report at 1. Recobo has three children from a prior marriage. See Report at 1. All three of his children currently reside in Mexico with their mother. See Report at 1. Recobo informed the United States Pretrial Services ("Pretrial Services") that he provides approximately $1,000.00 a month in financial support for his children. See Report at 1. Recobo related that, before his interview with Pretrial Services, he had been "staying with different friends at various locations in the Dodge City[, Kansas] area as he and his wife are separated." Report at 1. Before their separation, Recobo lived with his wife at an address in Dodge City for eight months. See Report at 1. Recobo informed Pretrial Services that he does not have a passport and that he last traveled to Mexico two months before the interview. See Report at 1. Since obtaining his card indicating his status as a permanent resident alien, Recobo has visited Mexico five times. See Report at 1. Recobo's ex-wife confirmed that he provides support for his children. See Report at 1. Recobo completed his high school education in Mexico and obtained a certificate in radiology in Mexico in the 1990's. See Report at 1. Recobo reported that he has worked in construction for the past nine years, where he earns fifteen dollars per hour. See Report at 1. Pursuant to instructions he received from his counsel, Recobo declined to discuss his alcohol and drug use. See Report at 2. Pretrial Services could not obtain any arrest history under Recobo's name. See Report at 2.

Erin Croft, a Special Agent with the United States Drug Enforcement Administration ("DEA"), executed an affidavit relating Recobo's alleged involvement in the underlying criminal

activity. See Affidavit of Special Agent Erin Croft (executed November 14, 2011), filed November 14, 2011 (Doc. 2)("Croft Aff."). On November 13, 2011, a New Mexico state police officer allegedly obtained 1.14 kilograms of methamphetamine from co-Defendant Efren Valencia-Montoya's vehicle. See Croft Aff. Following the arrest, Valencia-Montoya allegedly stated that Recobo had asked him if he wanted to make some extra money, to which Valencia-Montoya agreed. See Croft Aff. at 3. Valencia-Montoya allegedly said that he knew he was transporting controlled substances but that he was not aware what controlled substances he was transporting. See Croft Aff. at 3. Valencia-Montoya allegedly told officers that he would follow Recobo to an apartment complex somewhere in central Phoenix, Arizona where Recobo would place "the heat sealed packages" that ultimately contained methamphetamine "into the voids behind the [vehicle's] molding." Croft Aff. at 3. Valencia-Montoya allegedly related that "he was supposed to drive the controlled substances to Dodge City" where Recobo "lives and deliver them to" Recobo's residence. Croft Aff. at 3. State and federal agents then allegedly overheard and/or recorded several conversations between Recobo and Valencia-Montoya that related to the transportation of the drugs in Valencia-Montoya's vehicle. See Croft Aff. at 3-4. Valencia-Montoya allegedly, presumably pursuant to instructions from state and federal agents, told Recobo that his vehicle had broken down in Santa Rosa, New Mexico. See Croft Aff. at 3-4. Officers allegedly observed Recobo and co-Defendant Eulalio Suarez-Cabeza pull into a gas station where Valencia-Montoya's vehicle was located. See Croft. Aff. at 4. After the co-Defendants had allegedly taken some actions to remove the drugs from Valencia-Montoya's vehicle, the officers arrested Recobo and Suarez-Cabez. See Croft Aff. at 4-5.

**PROCEDURAL BACKGROUND**

On November 14, 2011, the United States filed a complaint charging Recobo: (i) with

conspiracy to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and (ii) with possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). See Criminal Complaint at 1 (Doc. 2). Pretrial Services concluded that Recobo is a flight risk based on the following factors: (i) his the lack of stable residence and mobile lifestyle; (ii) his use of other social security numbers: (iii) his strong ties to Mexico; (iv) his frequent travel to Mexico; (v) his possible deportation if convicted. See Report at 2. Pretrial Services found that Recobo is a danger to the community based on the nature of his alleged offense. See Report at 2. On November 15, 2011, Judge Torgerson issued his Detention Order, which concluded that Recobo was a flight risk. See Detention Order at 1-2. Recobo notes that, after the detention hearing conducted on November 15, 2011, his counsel reserved the right to file a motion requesting reconsideration of his conditions of release. See Motion at 1. Recobo never appealed the Detention Order. On December 1, 2011, the United States filed an indictment charging Recobo: (i) in Count I with conspiracy to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and (ii) in Count II with possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). See Indictment at 1-2 (Doc. 20).

On March 22, 2012, Recobo filed his Motion seeking reconsideration of his pretrial detention. See Doc. 40. He puts forth the following facts to support his pretrial release: (i) he is a resident of the United States and is authorized to work; (ii) he lives in Kansas and has lived there for almost twelve years; (iii) he has skills in a variety of fields and would have a position open for him with Adalberto Pineda at Pineda Auto Repair in Dodge City upon his release, see Letter from

Adalberto Pineda at 1 (dated March 12, 2012), filed March 22, 2012 (Doc. 40-1); (iv) he has three children in Mexico for whom he is the sole source of support; (v) he is willing to report to Pretrial Services in Kansas, and to comply with electronic monitoring and/or monitoring through a global positioning satellite; (vi) he is willing to give up any permission he has to travel internationally and to surrender his passport and/or travel documents; (vii) he is willing to restrict his travel to the area between Kansas and New Mexico; and (viii) he would reside with an acquaintance in Dodge City who owns and operates a daycare. See Motion at 1-2.

On March 22, 2012, the United States filed its Response to Defendant's Motion to Reconsider Detention Order. See Doc. 41 ("Response"). The United States asserts that "there is no new factual information not known to the defendant at the time he was first ordered detained that would justify reopening the hearing under 18 U.S.C. § 3142(f)." Response at 1. It notes that "all of the information listed in the Motion is personal and pertains directly to Defendant," and thus "he must surely have been aware of such at the original detention hearing." Response at 1. The United States then argues that, even if the evidence Recobo has put forward is new, the evidence does not "overcome the statutory presumption that he is both a flight risk and a danger to the community." Response at 2. The United States notes that Recobo has significant ties to Mexico, which it asserts would give him a stronger incentive to flee the country than many defendants. See Response at 2. It contends that Recobo "is exactly the type of high-level drug dealer that gave rise to the Congressional finding that defendant charged with serious drug crimes are presumed to be both dangerous and flight risks." Response at 2.

At the hearing on March 28, 2012, Recobo reiterated that his children are having a hard time in Mexico without his financial support. See Transcript of Hearing at 2:22-3:13 (taken March 28,

2012)(Kennedy)("Tr.").[1] He reiterated that he has no criminal history and is willing to surrender his passport. See Tr. at 2:22-3:13 (Kennedy). He asserted that he is not a danger and that someone was only trying to hand him drugs as opposed to him being in possession of them. See Tr. at 3:14-19 (Kennedy). Recobo then spoke to emphasize his family's financial hardships. See Tr. at 4:10-5:5 (Recobo). Recobo clarified that there was no detention hearing in front of Judge Torgerson. See Tr. at 5:13-15 (Court, Kennedy). The United States emphasized that a statutory presumption of detention applies based on the charges against Recobo. See Tr. at 5:20-6:3 (Torrez). The Court inquired whether the United States had argued that Recobo was a danger to the community given that Judge Torgerson did not make that finding but found only that Recobo was a flight risk. See Tr. at 6:21-25 (Court). The United States asserted that it generally takes the position that defendants involved in the drug trafficking trade are dangerous. See Tr. at 7:1-14 (Torrez).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 to 3150, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence. See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003). "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). To determine

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g) **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including --
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption can arise that the defendant is a flight risk and a danger to the community. See 18 U.S.C. § 3142(e)(3); United States

v. Villapudua-Quintero, 308 F.App'x 272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders). 18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46." 18 U.S.C. § 3142(e)(3)(A). The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more." United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993). Accord United States v. Holguin, 971 F.Supp.2d 1082, 1088 (D.N.M. 2011)(Browning, J.).

To determine whether the defendant has rebutted the presumption of detention, a court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would be posed by release. See 18 U.S.C. § 3142(g). Should the defendant satisfy his or her burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community. See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."). Notably,

however, even if the defendant meets her burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355. Accord United States v. Mercedes, 254 F.3d at 436.

## ANALYSIS

There is a presumption, based on the nature of the charges in the Indictment, that Recobo is a flight risk, as well as a danger to the community and to others. In the face of that presumption, Recobo has successfully met his burden of production to show that he is not a flight risk or danger to the community. The Court concludes that the United States has established by a preponderance of the evidence that Recobo is a flight risk. On the other hand, the Court concludes that the United States has not met its burden to prove by clear-and-convincing evidence that Recobo presents a danger to the community. The Court believes that there is no condition or combination of restrictions that would reasonably assure his appearance.

## I. THERE IS A PRESUMPTION OF DETENTION.

The charge that Recobo faces in Count 1, conspiracy to distribute 500 grams and more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), under the conspiracy statute contained in 21 U.S.C. § 846,[2] trigger a presumption of detention under 18 U.S.C. § 3142(e)(3)(A). See Indictment at 1-2. Recobo faces a minimum of ten-years imprisonment from this charge based on the alleged amount of drugs, see 21 U.S.C. § 841(b)(1)(A) ("[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."), and 18 U.S.C. § 3142(e)(3)(A) provides a presumption of

---

[2]18 U.S.C. § 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 18 U.S.C. § 846.

detention for this drug offense when "a maximum term of imprisonment of ten years or more is prescribed," 18 U.S.C. § 3142(e)(3)(A). The grand jury's probable cause determination is sufficient to trigger a statutory presumption of detention. See United States v. Silva, 7 F.3d at 1046. Thus, a presumption of detention applies.

## II. THE COURT CONCLUDES THAT RECOBO IS A FLIGHT RISK.

The Court concludes that Recobo should be detained pending trial. The Court concludes that Recobo has met his burden of production in the face of the statutory presumption favoring detention on the issues of flight risk and dangerousness. See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced."). While Recobo has met his burden of production in response to the presumption that he is a flight risk given the restrictive conditions he has proposed as well as his ties to the United States, the presumption of detention "remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355 (citation omitted). The Court concludes that the United States has proved by a preponderance of the evidence that Recobo is a flight risk. On the other hand, the Court concludes that the United States has not met its burden to prove by clear-and-convincing evidence that Recobo presents a danger to the community.

### A. RECOBO IS A FLIGHT RISK.

The Court finds, by the preponderance of the evidence, that Recobo is a flight risk. He faces charges that carry substantial sentences, including significant mandatory minimums, because he allegedly transported approximately 1.14 kilograms of methamphetamine. Recobo also has significant ties to Mexico, including various family members there, significant visits to Mexico, and a long history of living in Mexico. While Recobo has significant ties to the Dodge City area, he is not a citizen of the United States and would be deportable upon conviction -- thus giving him a

greater incentive to flee. The statutory presumption that he is a flight risk also remains a factor for the Court to consider even though Recobo has rebutted that presumption. Because of these considerations, the Court finds by a preponderance of the evidence that Recobo is a flight risk.

**1. The Nature and Circumstances of the Crimes Charged Demonstrate Recobo Is a Flight Risk.**

The crimes with which Recobo is charged carry substantial penalties. For example, the conspiracy charge he faces in Count 1 carries a statutory minimum of ten-years imprisonment and a maximum sentence of life imprisonment. See 21 U.S.C. § 841(b)(1)(A) ("[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."). These drug charges are serious and carry some lengthy potential sentences. Based on the serious nature of these charges, Recobo has additional incentive to flee the country or flee the State in which he is under pretrial supervision. The Court concludes that this factor weighs in favor of detention.

**2. The Weight of the United States' Evidence Against Recobo Shows That He Is a Flight Risk.**

The Croft Affidavit demonstrates that "the weight of the evidence offered in support of [the charges against Recobo is] significant," giving him many reasons to flee New Mexico, Kansas, or the United States if he is released pending trial. United States v. Cisneros, 328 F.3d at 618. The Croft Affidavit indicates that federal officers obtained a great deal of information about Recobo's alleged illegal conduct through one of his co-Defendants, Valencia-Montoya. Federal officers allegedly recorded and/or overheard conversations between Valencia-Montoya and Recobo that would implicate Recobo in drug trafficking. Federal officers allegedly observed Recobo arrive to assist Valencia-Montoya and observed Recobo engage in conduct indicating that Recobo knew narcotics were in Valencia-Montoya's vehicle. The proffered evidence indicates that the United States' case against Recobo is relatively strong, making potential convictions and imprisonment a

significant possibility for him. Thus, given the weight of the evidence against Recobo, this factor weighs in favor of detention.

**3. Recobo's History and Circumstances Show He Is a Flight Risk.**

Recobo's history and characteristics indicate that he has significant ties to Mexico and significant incentive to flee back to Mexico, or at least flee Kansas to avoid detection. While Recobo has established some ties to the Dodge City area, it does not appear that he has resided at any location in Dodge City for a particularly long period of time. For instance, he told Pretrial Services that he has been "staying with different friends at various locations in the Dodge City area as he and his wife are separated." Report at 1. Additionally, his most recent travel to Mexico was two months before his interview with Pretrial Services. He acknowledged that he has made various other trips to Mexico in recent years. He has three children there and an ex-wife whom he supports. While Recobo has held a steady job in construction for several years, much of his income goes to support his family back in Mexico. It also appears that he grew up in Mexico, including going to high school there, which indicates that flight there would be a potentially viable option for him in comparison to a defendant who had never lived in Mexico. See United States v. Armstrong, 397 F.App'x 466, 468 (10th Cir. 2010)(unpublished)(taking into account ties to Mexico when evaluating risk of flight); United States v. Gonzalez, No. 12-0128, 2012 WL 843728, at *10 (D.N.M. Mar. 9, 2012)(Browning, J.)("On the other hand, Gonzalez lived in Mexico for approximately sixteen years, which indicates that flight there would be a potentially viable option for him in comparison to a defendant who had never lived in Mexico"). Additionally, Recobo is not a United States citizen and is instead a resident alien who would be deportable upon conviction. That situation decreases the consequences to Recobo if he flees the country. Given his relatively frequent travels to Mexico, it appears he has the financial resources to travel to Mexico if he chose to flee there. See United States

v. Cisneros, 328 F.3d at 618 (noting that it is a relevant consideration that the defendant had "the resources available to her to abscond to Mexico should she choose to do so"). Thus, this factor weighs in favor of detention.

In sum, the Court finds by a preponderance of the evidence that Recobo is a flight risk given the serious penalties he faces, the strength of the United States' case, and his ties to Mexico. Additionally, while he successfully met his burden of production in the face of the presumption of detention, the Court believes that presumption remains a relevant factor and that it weighs in favor of detention. See, e.g., United States v. Moreno, 30 F.3d 127, 1994 WL 390091, at *2 (1st Cir. 1994)(unpublished table decision)("The presumption reflects Congress' findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade."). While the Court recognizes that Recobo wants to be on pretrial release so he can support his family, the Court also has an obligation to keep defendants in custody if they may become fugitives. A federal prosecution creates high stakes for Recobo given the significant charges and potential sentence he faces. Looking at all of the circumstances of Recobo's case and personal life, the Court believes his personal circumstances indicate he is a risk of flight.

**B. THE UNITED STATES HAS NOT PROVED BY CLEAR-AND-CONVINCING EVIDENCE THAT RECOBO IS A DANGER TO THE COMMUNITY.**

Because the United States has shown probable cause supporting Recobo's federal drug charge, the statutory presumption that Recobo poses a danger to the community is triggered. The only evidence or argument that Recobo offers that arguably meets his burden of production in the face of the statutory presumption that the Court should detain him as a danger to the community is his offer to live in a halfway house -- where his activities could be more easily monitored. An

argument could be made that offering only conditions of release -- and no evidence of lack of dangerousness -- is not enough to meet the burden of production. The presumption of detention, however, creates a presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3143(e)(3). The presumption itself talks about conditions. Accordingly, the Court believes that a defendant can meet his burden of production by merely offering appropriate conditions of release that reduce his danger to a specific individual or to the public generally to acceptable levels. See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced."). Recobo has met his burden of production. The presumption still remains a factor for the Court to consider, see United States v. Stricklin, 932 F.2d at 1355. The Court recognizes that Recobo appears to take supporting his family seriously. Additionally, Pretrial Services reports that they have found no arrest history for Recobo. It is true that his alleged involvement in the transportation of 1.14 kilograms of methamphetamine indicates that he may have significant involvement in drug trafficking. It is also true that drug trafficking activities pose a danger to the community. See United States v. Pina-Aboite, 97 F.App'x 832, 836 (10th Cir. 2004)(unpublished)(citing United States v. Cook, 880 F.2d 1158, 1161 (10th Cir. 1989))(recognizing that the 18 U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community"). Nevertheless, if monitored in a halfway house and subject to various conditions, including electronic monitoring and perhaps locked doors, the Court concludes that the risk could be reduced to an acceptable level. It would be much more difficult for Recobo to engage in drug trafficking activity if he was subject to strict monitoring in a halfway house. While some danger is present, such as Recobo engaging in drug trafficking through the use of a telephone, the

Court does not believe that, on the facts before it, it can reasonably find by clear-and-convincing evidence "that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e). If Recobo had a longer track record of drug trafficking activity, the Court would be more inclined to find that releasing him would pose too great of a danger to the community. The Court, however, concludes that the United States has not met its burden by clear-and-convincing evidence on the present record of showing that he is such a danger that no conditions will reduce that danger to an acceptable level.

## III. THE COURT CONCLUDES IT CANNOT REDUCE RECOBO'S RISK OF NONAPPEARANCE TO AN ACCEPTABLE LEVEL EVEN WITH RESTRICTIVE CONDITIONS.

Recobo has proposed some restrictive conditions that would help mitigate his risk of nonappearance, including surrendering his passport and submitting to electronic monitoring. While such conditions would -- to some extent -- mitigate his risk of nonappearance, the Court does not believe that they do so to an acceptable level to reasonably assure his appearance. Recobo's strong ties and frequent travels to Mexico indicate that fleeing to Mexico would be a viable option for him. It would also not be a particularly difficult task here in New Mexico. For example, even if he was in a halfway house here in Albuquerque, the border between the United States and Mexico is only a few hours away. He could potentially flee the country before law enforcement could respond. If living with his proposed custodian in Kansas, on the other hand, he could potentially flee to some other State in the country. Furthermore, as the United States Court of Appeals for the First Circuit has recognized: "The presumption [of detention] reflects Congress' findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade." United States v. Moreno, 1994 WL 390091, at *2. While Recobo has no history of drug trafficking activity, the alleged amount of drugs involved in this case

is significant and indicates that Recobo has some experience in the drug trafficking trade. Congress has recognized that individuals in the drug trafficking trade are more likely than other defendants to be capable of successfully fleeing the country. The United States also only has to prove by a preponderance of the evidence that a defendant is a flight risk, as opposed to by clear-and-convincing evidence. The Court concludes that the United States has met its burden here. Consequently, the Court will order that Recobo be detained pending trial.

**IT IS ORDERED** that the Defendant's Motion Appealing Detention Order Pending Trial and to Allow Reasonable Conditions of Release, filed March 22, 2012 (Doc. 40), is denied.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
United States Attorney
Jon K. Stanford
Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Christin K. Kennedy
Albuquerque, New Mexico

*Attorney for the Defendant*